# United States Court of Appeals
# for the Fifth Circuit

———————

No. 24-20299

———————

United States Court of Appeals
Fifth Circuit

**FILED**

November 14, 2025

Lyle W. Cayce
Clerk

KELLI SMITH,

*Plaintiff—Appellant*,

*versus*

UNITED PARCEL SERVICE, INCORPORATED,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-4138

———————————————————————

Before BARKSDALE, WILLETT, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

Kelli Smith sued her former employer, United Parcel Service, Incorporated (UPS), under the Texas Commission on Human Rights Act (TCHRA) alleging race, gender, and disability discrimination, retaliation, and a hostile work environment. The district court granted summary judgment to UPS on all claims and denied Smith's motion to reinstate.

———————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-20299

We AFFIRM summary judgment as to Smith's discrimination and retaliation claims, as well as the district court's denial of her motion to reinstate. But we VACATE the grant of summary judgment on her hostile-work-environment claim and REMAND for the district court to explain its reasoning in accordance with Federal Rule of Civil Procedure 56(a).

## I

## A

In September 2017, UPS—an international package delivery company—hired Kelli Smith as a package delivery driver. During her time at UPS, Smith filed numerous grievances, most of them alleging discrepancies in her pay. In addition to internal grievances, Smith filed two charges with the federal Equal Employment Opportunity Commission; one on March 4, 2021, and another on June 23, 2022.

During her deposition, Smith testified that in 2019 a manager she had never met before berated her, called her "little girl," and said he had heard Smith was an "angry black female." According to Smith, the manager told her he would not "put up with" her behavior and would fire her if necessary. She also testified that other people made sexual or derogatory comments, but she could not recall who made the comments, when or how they were made, or whether they were directed at her.

Before beginning her delivery route on the morning of September 1, 2022, Smith told one of her supervisors "in passing" that she was low on gas. The supervisor did not respond, but told all the drivers to deliver their Next Day Air packages. While on the road, Smith contacted her on-road supervisor and was told to return to the UPS facility. Before returning, Smith marked a number of packages as undeliverable, writing that the packages could not be delivered because she was out of gas. Smith also marked one package as

2

delivered that she had not delivered (and which another driver later delivered).

The next day, UPS terminated Smith, citing a provision in its collective bargaining agreement allowing termination for dishonesty. According to Smith, however, she was initially told she was being given a warning and was only later informed she had been terminated.

B

Shortly after her termination, Smith sued in state court, alleging race, gender, and disability discrimination, retaliation, and hostile work environment under the TCHRA. UPS timely removed the case to federal court under 28 U.S.C. §§ 1332(a)(1) and 1441(a).

At the close of discovery, UPS moved for summary judgment on all claims. Following a hearing, the district court granted summary judgment on the discrimination and retaliation claims but concluded that "the hostile work environment claim barely, barely clear[ed] the bar," so it denied summary judgment on that claim.

After the initial summary-judgment ruling, counsel for both sides notified the court that the parties had reached a settlement. In response, the court entered a conditional order of dismissal, dismissing the case without prejudice but allowing it to be reinstated if the parties notified the court within 60 days if the settlement could not be finalized. Before the settlement was finalized, Smith's counsel moved to withdraw, citing "substantial difficulties in maintaining communication with" Smith. At a status hearing, Smith disavowed the settlement. The district court granted counsel's motion to withdraw and reinstated the case.

UPS then moved to reconsider the denial of summary judgment on the hostile-work-environment claim. Meanwhile, Smith (now proceeding pro se) filed a "motion to reinstate." At another hearing, the court granted

No. 24-20299

UPS's motion to reconsider and denied Smith's motion to reinstate. Later that day, the court granted final judgment in favor of UPS on all claims.

Smith (still proceeding pro se) timely appealed.

## II

"We review a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor."[1] Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court."[3]

## III

## A

The "Issues Presented" section of Smith's brief consists largely of accusations of misconduct by UPS and her former counsel. Most of these allegations rely on material not in the record. And more fundamentally, Smith does not explain how they relate to the district court's decisions she is actually appealing—namely, the grant of summary judgment for UPS and the denial of her motion to reinstate.

One arguable exception is Smith's contention that the district court's "*stark* warning at the conclusion of [the] court hearing held February 23, 2024, prompt[ed] the urgency of a bogus, dubious settlement agreement."

---

[1] *Pierce v. Dep't of U.S. Air Force*, 512 F.3d 184, 186 (5th Cir. 2007) (citation omitted).

[2] Fed. R. Civ. P. 56(a).

[3] *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001) (citation omitted).

That appears to refer to the district court's remark at the close of the initial summary-judgment hearing that the parties "ought to get this case settled" because "the trial would be so ugly; bad for everybody." We have long recognized that "a district court has inherent power to . . . encourage . . . settlement agreements . . . ."[4] To the extent Smith suggests that the court's remark crossed the line into improper coercion, we see no basis for that claim. And even if it had, any error would be harmless: the district court permitted Smith to withdraw from the settlement agreement.

B

Liberally construing Smith's pro se brief,[5] we understand her to argue that the district court erred in granting summary judgment on her discrimination, retaliation, and hostile-work-environment claims, and in denying her motion to reinstate. We address each argument in turn. Because Smith's claims arise under state law, "we apply state substantive law and federal procedural law."[6] And because the relevant provision of the TCHRA "is effectively identical to Title VII, its federal equivalent . . cases interpreting [Title VII] guide our reading of the TCHRA."[7]

First, Smith contends that the district court erred in granting summary judgment on her race, gender, and disability discrimination claims. A plaintiff may prove discrimination under the TCHRA either through direct evidence or by invoking the burden-shifting framework set out in

---

[4] *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994) (citation omitted).

[5] *See Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012) ("We give *pro se* briefs a liberal construction." (citation omitted)).

[6] *Retro Metro, LLC v. City of Jackson ex rel. City Council*, 147 F.4th 551, 557 (5th Cir. 2025).

[7] *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012).

*McDonnell Douglas Corp. v. Green*.[8] On appeal, Smith briefly refers to direct evidence. But in the district court, she relied exclusively on *McDonnell Douglas*. We therefore limit our analysis to the *McDonnell Douglas* framework.[9]

Under *McDonnell Douglas*, a plaintiff bears "the initial burden" of establishing a prima facie case of discrimination.[10] If she does so, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for" the adverse action.[11] The plaintiff then has the "opportunity to show that [the employer's] stated reason . . . was in fact pretext."[12] "To establish a prima facie case of discrimination under the TCHRA, the plaintiff must establish that 'she (1) was a member of [a] protected class, (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone outside the protected class or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class.'"[13]

Smith's discrimination claims falter because she has not satisfied the fourth element of a prima facie case: she has not shown that she was treated less favorably than someone outside her protected class. In the district court, Smith conceded that she had not identified a similarly situated coworker who

---

[8] 411 U.S. 792 (1973); *see Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021).

[9] *See Ross*, 993 F.3d at 322 ("For the first time on appeal, [the plaintiff] argues that she established her prima facie case through direct evidence. Because [she] did not present this argument to the district court, we cannot consider it." (citation omitted)).

[10] *McDonnell Douglas*, 411 U.S. at 802.

[11] *Id.*

[12] *Id.* at 804.

[13] *Ross*, 993 F.3d at 321–22 (cleaned up).

was treated more favorably. Instead, she pointed to "general" statements about "other individuals" (whom she did not identify) "that were in her position." Without more information about these other individuals, we cannot assess whether they were given "preferential treatment . . . under 'nearly identical' circumstances."[14] Accordingly, such vague generalities do not establish a prima facie case of discrimination.

The district court therefore did not err in granting summary judgment to UPS on Smith's discrimination claims.

## C

Like her discrimination claims, Smith's retaliation claim is subject to the *McDonnell Douglas* framework.[15] To establish a prima facie case of retaliation under the TCHRA, Smith must "demonstrate that: (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action."[16]

On appeal, Smith principally argues that she was terminated for complaining about "payroll discrepancies." But as relevant here, protected activities include "oppos[ing] any practice *made an unlawful employment practice under* the TCHRA."[17] And while the TCHRA forbids "discrimination with respect to compensation," it does not cover

---

[14] *Little v. Republic Refin. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (citations omitted).

[15] *See Gorman v. Verizon Wireless Tex., LLC*, 753 F.3d 165, 170–71 (5th Cir. 2014) (applying *McDonnell Douglas* to a TCHRA retaliation claim).

[16] *Id.* at 170 (quoting *Royal v. CCC & R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013)).

[17] *Id.* (cleaned up) (emphasis added) (quoting *Royal*, 736 F.3d at 400).

"compensation issues . . . when they do not allege discrimination . . . ."[18] Because Smith's complaints about "payroll discrepancies" did not allege discrimination, they were not protected activity. Smith also points to her complaints about "the array of mechanical issues she experienced." Because Smith does not point to any evidence suggesting that those complaints alleged discrimination, they too are not protected activity.[19]

In the district court, Smith also relied on her second EEOC charge, the filing of which constitutes a protected activity.[20] But even if Smith had properly raised that argument on appeal, it would fail on the merits. To establish the requisite causal connection, Smith points only to the temporal proximity between her EEOC charge, which was filed June 23, 2022, and her termination, which occurred on September 2, 2022. We have held that "temporal proximity alone, when very close, can in some instances establish a *prima facie case* of retaliation."[21] But even assuming that the two-and-a-half month time period could establish a prima facie case, Smith's retaliation claim still falters. UPS offered a legitimate reason—dishonesty—for

---

[18] *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 329 (5th Cir. 2017); *see* Tex. Lab. Code § 21.051(1) ("An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer . . . discriminates . . . against an individual in connection with compensation . . . .").

[19] Smith also points to "other illegal, immoral, [and] unethical treatment." But because her brief does not explain what this refers to, she has forfeited any argument based on her allegations of unspecified unethical conduct.

[20] *See Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 295 (5th Cir. 2025) ("The filing of an EEOC charge constitutes protected activity.") (citation omitted).

[21] *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007) (emphasis in original) (citation omitted).

terminating Smith.[22] Thus, the burden then shifts back to Smith to show that UPS's proffered reason was a pretext for retaliation, which she can do "by showing that the adverse action would not have occurred 'but for' [UPS's] retaliatory motive."[23] However, we have "affirmatively reject[ed] the notion that temporal proximity standing alone can be sufficient proof of but for causation."[24] Thus, because Smith relies solely on temporal proximity, she cannot show that UPS's proffered reason for terminating her was pretextual.

The district court therefore did not err in granting summary judgment to UPS on Smith's retaliation claim.

## D

That leaves Smith's hostile-work-environment claim. The district court initially denied summary judgment, finding that claim "barely, barely clear[ed] the bar." Later, however, the district court reversed course and granted summary judgment. Its entire explanation was:

---

[22] *Sigley v. ND Fairmont LLC*, 129 F.4th 256, 261 (4th Cir. 2025) ("[D]ishonesty is misconduct worthy of termination . . . ."); *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 657 (10th Cir. 2013) ("Debord cannot dispute that dishonesty is a valid ground for terminating an employee."); *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 284 (6th Cir. 2012) ("Fraud and dishonesty constitute lawful, non-retaliatory bases for termination."); *Wilkey v. United Parcel Serv., Inc.*, 740 F. App'x 51, 52 (5th Cir. 2018) (affirming district court finding that dishonesty is a legitimate, nondiscriminatory reason for termination); *Anderson v. Tupelo Reg'l Airport Auth.*, 568 F. App'x 287, 291 (5th Cir. 2014) (holding that "dishonesty that resulted in a loss of confidence . . . constitutes a legitimate nondiscriminatory reason for . . . termination"); *cf. Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (holding that falsifying medical records is a legitimate, nondiscriminatory basis for termination); *Noel v. Andrus*, 810 F.2d 1388, 1393 (5th Cir. 1987) (holding that "[d]ishonesty is a reasonable ground for dismissal" under Louisiana law).

[23] *Feist v. La. Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

[24] *Strong*, 482 F.3d at 808.

[A] hostile work environment, the Fifth Circuit has told us, exists when a workplace is, quote, permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.

You have not given me any evidence that there existed such an atmosphere of [sic] where you worked.

Federal Rule of Civil Procedure 56(a) requires a district court, when ruling on summary judgment, to "state on the record the reasons for granting or denying the motion."[25] Even before this language was added, we repeatedly "emphasized the importance of a detailed discussion by the trial judge."[26] "When we have no notion of the basis for a district court's decision, because its reasoning is vague or was simply left unsaid, there is little opportunity for effective review."[27] That is especially so when, as here, the movant advances several arguments in favor of summary judgment, and we cannot tell which rationale the district court relied on.[28]

The district court's explanation did not comply with Rule 56(a). It did not make clear which of UPS's arguments persuaded the court to grant summary judgment. And it did not explain why, despite its initial conclusion that Smith had presented sufficient evidence to proceed to trial, it now believed that summary judgment was appropriate. "In such cases, we have

---

[25] FED. R. CIV. P. 56(a).

[26] *Heller v. Namer*, 666 F.2d 905, 911 (5th Cir. Unit A 1982) (citation omitted).

[27] *Myers v. Gulf Oil Corp.*, 731 F.2d 281, 283–84 (5th Cir. 1984) (citation omitted); *see also White v. Tex. Am. Bank/Galleria, N.A.*, 958 F.2d 80, 82 (5th Cir. 1992) ("Without adequate findings of fact and conclusions of law, we are severely hampered if not completely obstructed in our review.").

[28] *See Mosley v. Ogden Marine, Inc.*, 480 F.2d 1226, 1226 (5th Cir. 1973) (per curiam) ("This is especially true when, as here, an appellate court cannot ascertain which of several theories formed the basis for the entry of summary judgment.").

not hesitated to remand the case for an illumination of the court's analysis through some formal or informal statement of reasons."[29] We do so here.

We pause, however, to note two factors we do *not* rely on in concluding that the district court failed to comply with Rule 56(a). First, we are unbothered by the district court's decision to rule orally rather than in writing. That was the practice in early American courts, and we have held that it remains permissible today.[30] Rule 56(a) requires only that a district court's reasons be "state[d] on the record," not that they appear in writing.[31] Nor do we fault the court for its change of heart. A partial denial of summary judgment "may be revised at any time before the entry of [final] judgment."[32] If the summary-judgment record and the applicable law ultimately supported summary judgment (an issue we do not decide), we cannot fault the district court for refusing to "reject [wisdom] merely because it comes late."[33] Our concern is solely the lack of explanation for the ultimate decision to grant summary judgment, not the process surrounding that decision.

## IV

Smith also appeals the district court's denial of her motion to reinstate. That motion sought reinstatement of her case, a new scheduling order, and a new trial date. The basis for the motion is not entirely clear, but it appears to rest on some combination of (1) alleged errors in the district court's grant of summary judgment on Smith's discrimination and retaliation

---

[29] *Myers*, 731 F.2d at 284.

[30] *Ueckert v. Guerra*, 38 F.4th 446, 449 (5th Cir. 2022).

[31] Fed. R. Civ. P. 56(a).

[32] Fed. R. Civ. P. 54(b).

[33] *Henslee v. Union Planters Nat'l Bank & Trust Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting).

claims, (2) evidence Smith asserts she possesses but never put in the record, and (3) counsel's alleged failures during discovery. But none of these grounds justifies relief.

First, as explained above, the district court did not err in granting summary judgment on the discrimination and retaliation claims. Second, neither we nor the district court can properly consider evidence Smith claims to have but failed to place in the record.[34] And finally, even assuming that Smith's counsel should have introduced additional material or pursued further discovery, Smith is bound by her counsel's acts and omissions.[35]

The district court therefore did not err in denying Smith's motion to reinstate.

V

We VACATE the district court's grant of summary judgment on Smith's hostile-work-environment claim and REMAND for the district court to "state on the record its reasons" in accordance with Rule 56(a).[36] In all other respects, we AFFIRM the judgment of the district court.

---

[34] *Cf. Trinity Indus., Inc. v. Martin*, 963 F.2d 795, 799 (5th Cir. 1992) ("Generally, we will not enlarge the record on appeal with evidence not before the district court.").

[35] *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1418 (5th Cir. 1995) ("There is no question, however, that a party is bound by the acts of his attorney.") (citations omitted).

[36] Our mandate should not be understood to preclude the district court from revising its conclusion that summary judgment was warranted on plaintiff's hostile-work-environment claim, if the district court believes revision is warranted.